977 F.2d 566
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Robert F. SCOTT, Plaintiff, Appellant,
v.
CENTRAL MAINE POWER COMPANY, et al., Defendants, Appellees.
 No. 91-1150.
 United States Court of Appeals,
First Circuit.
 October 20, 1992
 
 Appeal From the United States District Court for the District of Maine
 John S. Campbell with whom Richard E. Poulos, Paul F. Zendzian, and Poulos, Campbell & Zendzian, P.A., were on brief for appellant.
 Charles A. Harvey, Jr., with whom William C. Knowles and Verrill & Dana were on brief for appellees.
 D.Me.
 AFFIRMED.
 Before Selya, Circuit Judge, Campbell, Senior Circuit Judge, Pettine,* Senior District Judge.
 Per Curiam.
 
 
 1
 The district court's grant of summary judgment in favor of appellees on Count V (breach of employment contract) and partial summary judgment in favor of appellees on Counts III and IV (constitutionally protected property interest in employment) is affirmed for substantially the reasons stated in the magistrate judge's May 23, 1990 findings and recommendation. Likewise, the district court's grant of summary judgment in favor of appellees as to Counts VI (wrongful discharge) and VII (intentional infliction of emotional distress) is affirmed for essentially the reasons stated in its ruling from the bench on August 16, 1990. Finally, the district court's award of $286,443.73 on Central Maine Power Company's ("CMP's") counterclaims is affirmed for the reasons stated in its opinion dated January 15, 1991. We write only to clarify the following points.
 
 
 2
 This action arose out of the termination of appellant, Robert F. Scott, the former Senior Vice President and a director of CMP, for his admitted false testimony before the Maine Public Utilities Commission ("MPUC") and his subsequent attempts to cover up the falsity of this testimony from both the MPUC and CMP itself. Appellant asserted, among other claims, that his discharge from employment constituted a breach of express and implied contract. The district court granted summary judgment in favor of CMP on this claim as well as a related claim of deprivation of a constitutionally protected property interest in employment because appellant failed to demonstrate an express agreement giving him more than an employment-at-will contract. See, e.g., Larrabee v. Penobscot Frozen Foods, Inc., 486 A.2d 97, 99-100 (Me. 1984).
 
 
 3
 Appellant contends that the district court failed to address whether appellant had a contract right to have disciplinary sanctions imposed in a non-discriminatory manner, and instead addressed only, in a general sense, whether appellant's contract was terminable "for cause." Appellant relies on a provision in the CMP Employee Handbook, which states that "[d]isciplinary action will generally be taken for remedial purposes and every effort shall be made to insure that the action taken is just and that it follows a pattern consistent with other situations which may arise in the Company." According to appellant, this provision was violated when CMP fired appellant for his false testimony and his subsequent attempts to conceal the falsity of this testimony, while CMP simultaneously refused to discharge its president, Elwin Thurlow, and another CMP employee, Robert Leason, both of whom appellant alleges were involved in the very same cover-up before the MPUC.
 
 
 4
 It is open to question whether the quoted Handbook provisions are sufficiently definite ("[d]isciplinary action will generally be taken for remedial purposes and every effort shall be made ....) to support a contract claim based on the alleged inconsistency between appellant's firing and the lack of sanctions in other cases. But assuming arguendo that the handbook provision regarding consistent disciplinary action expressly restricted CMP's right to discharge employees at will as required by Maine law, see Libby v. Calais Regional Hosp., 554 A.2d 1181, 1183 (Me. 1989), appellant's argument still fails because, on the undisputed facts, appellant was not similarly situated to the corporate employees mentioned above. Appellant alone, on his own initiative, provided the false testimony before the MPUC, thereby precipitating the subsequent prolonged investigation by both the MPUC and the Attorney General. While Thurlow and Leason may afterwards have participated to some extent in a cover-up of this false testimony, appellant was the only employee who was criminally prosecuted, who pled guilty to the crime of false swearing, and who admitted to lying to the Ad Hoc Committee formed by CMP to investigate the cover-up before the MPUC. Thus appellant's argument that firing him while not discharging the others was an inconsistency so gross as to violate the language of the CMP Employee Handbook simply fails to reach the level of a supportable contract claim. We find no error in the district court's grant of summary judgment on appellant's breach of contract claim.
 
 
 5
 Next, appellant contends in his reply brief on appeal that the district court disregarded his claim of negligent infliction of emotional distress when it granted summary judgment as to Count VII of the amended complaint, which specifically alleged only intentional infliction of emotional distress. Because appellant failed to make this argument in his initial brief on appeal, the argument has been waived. E.g., Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983).
 
 
 6
 Appellant also argues for the first time in his reply brief that intervening factors constituted superseding causes that severed the proximate cause relationship between appellant's dishonest conduct and the resulting prolonged MPUC and criminal investigations. See Springer v. Seamen, 821 F.2d 871, 877 (1st Cir. 1987) (citing factors listed in section 442 of the Restatement (Second) of Torts to be examined in determining whether an intervening force is a superseding cause). Accordingly, appellant contends that the $268,961.24 awarded to CMP on its breach of fiduciary duty counterclaim must be reversed. Appellant's factual support for this argument is sketchy. Appellant refers generally to the conduct of Thurlow, the Ad Hoc Committee and counsel for CMP, as well as the hostile relationship between the MPUC and CMP, as "exacerbat[ing] the problems" caused by appellant's false testimony and attempted cover-up. However, an investigation by both the MPUC and the Attorney General is precisely the type of harm that one would expect to result from the crime of false swearing before the MPUC. Moreover, the strenuous attempts by both the Ad Hoc Committee and CMP's counsel to defend both the company and its corporate officers were not extraordinary given the potential regulatory and criminal penalties as well as the damage to the reputation of the company as a result of appellant's false testimony. As to the hostile relationship between the MPUC and CMP, appellant himself admitted that he was aware of this strained relationship before he testified falsely before the MPUC. Thus, it was reasonably foreseeable that appellant's dishonest conduct would lead to an intense investigation by the MPUC. Finally, Thurlow's alleged participation in the cover-up is simply insufficient to break the direct chain of proximate causation. Accordingly, even if we were inclined to review appellant's contention regarding superseding causes, which was raised for the first time on appeal in appellant's reply brief, we would still find no error in the district court's determination as to proximate causation.
 
 
 7
 One final argument deserves brief attention. Appellant claims that he presented sufficient evidence at trial for the district court to apportion damages between those caused by appellant's false testimony and those caused by CMP's subsequent efforts to defend the company and corporate officers other than appellant. Appellant contends that he should not be responsible for any legal costs incurred after December 13, 1982, the date that he pled guilty to the misdemeanor of false swearing. This argument ignores the fact that all legal fees incurred by CMP to defend the investigations of the MPUC and the Attorney General were a direct result of appellant's false testimony. Appellant failed to present to the district court any evidence indicating that an identifiable portion of the legal fees was caused by actions unrelated to his false testimony and his attempts to conceal this false testimony. Accordingly, the district court properly held appellant liable for the full amount of $268,961.24 on CMP's counterclaim for breach of fiduciary duty.
 
 
 8
 There is no need for further elaboration. We have carefully examined appellant's remaining claims of error and find none of them persuasive. After over five years of discovery and two weeks of trial, it is time for this litigation to come to an end.
 
 
 9
 The district court's grant of summary judgment in favor of appellees on appellant's claims of breach of contract, deprivation of a constitutionally protected property interest, wrongful discharge, and intentional infliction of emotional distress is affirmed.
 
 
 10
 The district court's award of $286,443.73 on CMP's counterclaims is affirmed. Costs in favor of appellees.
 
 
 
 *
 Of the District of Rhode Island, sitting by designation